IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT TEXAS
WACO DIVISION

| | |
|---|---|
| MicroPairing Technologies LLC, | |
| Plaintiff, | |
| v. | Civil Action No. 6:20-CV-01001-ADA |
| Toyota Motor Manufacturing Texas, Inc., | JURY TRIAL DEMANDED |
| Defendant. | |

## DEFENDANT TOYOTA MOTOR MANUFACTURING TEXAS, INC.'S MOTION TO DISMISS

**<u>TABLE OF CONTENTS</u>**

I.    FACTUAL BACKGROUND ............................................................................................ 2

   A.  Prior Litigation and Invalidity Decision for Related Patent ................................................. 3

   B.  Assignment of Asserted Patents from Eagle Harbor to MicroPairing ............................... 4

   C.  The '136 Patent Has the Same Disclosure as, and the '292 and '816 Patents Have a
       Narrower Disclosure than, the Invalid '119 Patent ............................................................. 5

   D.  MicroPairing's Asserted Claims Include the Same Limitations Found to Lack Written
       Disclosure Support in the Prior Litigation ......................................................................... 5

   E.  MicroPairing's Allegations of Indirect Infringement in This Litigation ............................ 8

II.   LEGAL STANDARD .................................................................................................... 8

   A.  Legal Standard for Motion to Dismiss based on Issue Preclusion...................................... 8

   B.  Legal Standard for Motion to Dismiss Indirect Infringement Claims ............................... 9

III.  ARGUMENT ............................................................................................................. 10

   A.  MicroPairing is Precluded from Relitigating the Validity of the '292, '136, and '816
       Patents. .............................................................................................................................. 10

      1. This case involves invalidity issues identical to the issue in the Prior Litigation......... 10

      2. The invalidity issue was fully and vigorously litigated in the Prior Litigation. ........... 14

      3. The invalidity finding was necessary to support the judgment in the Prior Litigation. 14

      4. There are no special circumstances that would render preclusion inappropriate or
         unfair. ........................................................................................................................... 15

   B.  MicroPairing's Claims of Indirect Infringement are Deficient and Should be Dismissed 16

      1. MicroPairing Fails to Allege Knowledge of the '816 and '015 Patents. ...................... 16

      2. MicroPairing Fails to Allege Toyota Specifically Intended to Induce Infringement of
         the '816 and '015 Patents................................................................................................ 18

IV.   CONCLUSION ........................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Addiction & Detoxification Inst. L.L.C. v. Carpenter*,
620 F. App'x 934 (Fed. Cir. 2015) ...................................................................20

*Affinity Labs of Texas, LLC v. Toyota Motor North America*,
No. 6:13-CV-365-JCM, 2014 WL 2892285 (W.D. Tex. May 12, 2014) ..................10, 17, 20

*Aguirre v. Powerchute Sports, LLC*,
No. 5:10–CV–702–XR, 2011 WL 3359554 (W.D. Tex. Aug. 4, 2011)................................16

*Allergan, Inc. v. Sandoz, Inc.*,
681 F. App'x 955 (Fed. Cir. 2017) ...............................................................8, 14

*Arunachalam v. Exxon Mobil Corp.*,
No. 6:19-CV-00171-ADA, 2019 WL 10303695 (W.D. Tex. June 26, 2019) .............1, 8, 9, 13

*Arunachalam v. Intuit, Inc.*,
No. 6:19-CV-00172-ADA, ECF No. 28 (W.D. Tex. July 15, 2019).........................................9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).........................................................................2, 9, 10, 20

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007).........................................................................2, 9, 10, 20

*Bowman v. Daiichi Pharms., Inc.*,
No. 1:09-CV-00013-SS, 2009 WL 10699960 (W.D. Tex. Mar. 11, 2009) ...........................15

*Cardinal Chem. Co. v. Morton Int'l, Inc.*,
508 U.S. 83 (1993)........................................................................................14

*Castlemorton Wireless, LLC v. Comcast Corp.*,
No. 6:20-CV-00034-ADA (W.D. Tex. July 25, 2020) .........................................................17

*Eagle Harbor Holdings, LLC v. Ford Motor Co.*,
No. 3:11-CV-05503-BHS (W.D. Wash.)...............................................................................1

*Global-Tech Appliances, Inc. v. SEB S.A.*,
563 U.S. 754 (2011)........................................................................10, 17, 18, 19

*Hypermedia Navigation LLC v. Google LLC*,
No. 18-CV-01637-HSG, 2019 WL 1455336 (N.D. Cal. Apr. 2, 2019)....................................19

*Iron Oak Techs., LLC v. Acer Am. Corp.*,
No. 6:17-CV-143-RP-JCM, 2017 WL 9477677 (W.D. Tex. Nov. 28, 2017) .......10, 18, 19, 20

*Joao Control & Monitoring Sys., LLC v. Protect Am., Inc*.,
No. 1:14-CV-134-LY, 2015 WL 3513151 (W.D. Tex. Mar. 24, 2015) ................................18

*Meraz v. M Susan Rice, P.C.*,
No. 5:09-CV-138-OG, 2009 WL 10669232 (W.D. Tex. May 15, 2009) ................................1

*Norris v. Hearst Tr*.,
500 F.3d 454 (5th Cir. 2007) .................................................................................................3

*Ohio Willow Wood Co. v. Alps S., LLC*,
735 F.3d 1333 (Fed. Cir. 2013)...........................................................................................13

*Parus Holdings Inc. v. Apple Inc*.,
No. 6:19-CV-00432-ADA, ECF No. 101 (W.D. Tex. Jan. 31, 2020) (Albright, J.) ..........2, 17

*Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*,
778 F.3d 1311 (Fed. Cir. 2015).....................................................................................9, 13, 15

*State Farm Mut. Auto. Ins. Co. v. LogistiCare Solutions, LLC*,
751 F.3d 684 (5th Cir. 2014) .................................................................................................9

*Taylor v. Sturgell*,
553 U.S. 880 (2008)..............................................................................................................15

*Vines v. Univ. of Louisiana at Monroe*,
398 F.3d 700 (5th Cir. 2005) ...............................................................................................15

*VLSI Tech., LLC v. Intel Corp*.,
No. 6:19-CV-254-ADA, 2019 WL 11025759 (W.D. Tex. Aug. 6, 2019)..............................18

*Watts v. XL Sys., L.P.*,
No. 1:06-CV-653LY, 2008 WL 5731945 (W.D. Tex. July 2, 2008)......................................16

*Wheeler v. Kidder Peabody & Co., Inc*.,
No. 92-2930, 1993 WL 455869 (5th Cir. Oct. 26, 1993) ......................................................15

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6)...........................................................................................................8

Fed. R. Evid. 201(b)................................................................................................................3

Plaintiff MicroPairing Technologies LLC ("MicroPairing") alleges that Defendant Toyota Motor Manufacturing Texas, Inc. ("Toyota"), infringes seven asserted patents.[1] Three of these patents are invalid for lack of written description, and MicroPairing is collaterally estopped from arguing otherwise. Specifically, MicroPairing's predecessor-in-interest (Eagle Harbor Holdings, LLC ("Eagle Harbor")) asserted against Ford Motor Company ("Ford") a related patent to the patents at issue here (U.S. Patent 8,006,119 (the "'119 Patent")). *See Eagle Harbor Holdings, LLC v. Ford Motor Co.*, No. 3:11-CV-05503-BHS (W.D. Wash.) (hereinafter the "Prior Litigation"). As detailed below, Ford alleged in the Prior Litigation that the '119 Patent was invalid because the asserted claim recited limitations (the "downloading or moving" limitations) that were not supported by the '119 Patent's written description. *See* Part I.A *infra*. The jury agreed and rendered a verdict of invalidity for lack of written description for Claim 1 of the '119 Patent, and the district court entered judgement of invalidity for lack of written description. *Id*.

Three patents asserted in this case (U.S. Patent Nos. 8,583,292 (the "'292 Patent"), 7,793,136 (the "'136 Patent"), and 8,953,816 (the "'816 Patent")) include claims that contain the same "downloading or moving" limitations at issue in the Prior Litigation. All three of these patents contain the same (or narrower) written description as the written description that was the basis for finding a lack of written description for the "downloading or moving" limitations in the Prior Litigation. *See* Part I.D *infra*. Because the identical issue was fully litigated in the Prior Litigation, was necessary to support the judgment there, and there are no special circumstances here that would render preclusion inappropriate or unfair, this Court should dismiss MicroPairing's infringement claims with respect to the '292, '136, and '816 Patents. *See Arunachalam v. Exxon*

---

[1] This motion is directed to four of the seven asserted patents and suspends Toyota's obligation to respond to the entire complaint. *See Meraz v. M Susan Rice, P.C.*, No. SA-09-CV-138-OG, 2009 WL 10669232, at *1-2 (W.D. Tex. May 15, 2009).

*Mobil Corp.*, No. 6:19-CV-00171-ADA, 2019 WL 10303695 (W.D. Tex. June 26, 2019) (Albright, J.).

MicroPairing's claims of indirect infringement with respect to the '816 Patent and U.S. Patent No. 9,697,015 (the "'015 Patent") are also deficient. With respect to these patents, MicroPairing generally alleges that Toyota induced direct infringement by its customers and end users. But MicroPairing fails to present *any* allegations that Toyota had pre-suit knowledge of the '816 or '015 Patents, or facts to support its allegation that Toyota had the specific intent to induce either pre-suit or post-suit infringement, as required under *Iqbal* and *Twombly*. Without any allegations of pre-suit knowledge of the '816 or '015 Patents, MicroPairing's allegations of pre-suit induced infringement fail at the outset. And MicroPairing's allegations of post-suit induced infringement fare no better as it has failed to provide any factual allegations to support the inference that Toyota had the specific intent to induce infringement. Consistent with this Court's precedent, MicroPairing's claims of induced infringement should be dismissed. *See, e.g., Parus Holdings Inc. v. Apple Inc.*, No. 6:19-CV-00432-ADA, ECF No. 101 (W.D. Tex. Jan. 31, 2020) (Albright, J.).

## I.   FACTUAL BACKGROUND

On October 28, 2020, MicroPairing sued Toyota. In its Complaint, and relevant to this motion, MicroPairing alleges direct infringement of at least independent Claim 1 of the '292 Patent, and certain of its dependent claims (Compl. ¶ 110); independent Claim 31 of the '136 Patent (Compl. ¶ 66); and independent Claim 17 of the '816 Patent, and its dependent claims (Compl. ¶ 84). It also alleges indirect infringement of at least Claims 1-4, 6, and 10-16 of the '816 Patent (Compl. ¶ 89), and Claims 1-11, 13-14, and 16 of the '015 Patent (Compl. ¶ 102).

### A. Prior Litigation and Invalidity Decision for Related Patent

On June 30, 2011, Eagle Harbor, sued Ford for patent infringement in the Western District of Washington.[2] *See* Compl., Prior Litigation, ECF No. 1. Eagle Harbor asserted eleven patents in the Prior Litigation, including the '119 Patent. Second Am. Compl. ¶ 1, Prior Litigation, ECF. No. 61. Ford asserted counterclaims of non-infringement and invalidity on each patent. Answer to Second Am. Compl. and Countercls. at 14-22, Prior Litigation, ECF No. 62.

The parties fully litigated their claims and counterclaims through a twelve-day jury trial on the merits. Trial Trs., Prior Litigation, ECF Nos. 677-686, 694-695. During that trial, Ford presented its counterclaim for invalidity of Claim 1 of the '119 Patent for inadequate written description. Kubehl Decl. Ex. E, at 4. Ford and Eagle Harbor both presented expert testimony on the written description issue. *Id.* at 4, 14-19, 25-30, 142, 148, 177-180.

Claim 1 of the '119 Patent claims a system with multiple processors, where at least one processor is configured to function in a distributed processing system to identify and connect a device that is not connected to the processing system. Second Am. Compl. Ex. I, at 13-14, Prior Litigation, ECF No. 61. As part of the process of connecting the device, an application stored in memory is identified, downloaded from memory into the processing system, and used to process data received from the device. *Id.*

During the trial, Ford's invalidity expert testified that the '119 Patent was invalid because the specification for the '119 Patent does not describe the "downloading or moving" limitations. Kubehl Decl. Ex. E, at 14. In particular, Ford's expert explained:

> [W]e needed to have a description of moving or downloading applications in response to connecting a device. So you have an application stored somewhere.

---

[2] The Court may take judicial notice of public records. *See Norris v. Hearst Tr.*, 500 F.3d 454, 461 n. 9 (5th Cir. 2007) (noting "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record."); *see also* FED. R. EVID. 201(b).

> You connect the device, and then you move applications. Well, *nowhere in this patent is that described*. There are things that are described where you process data from the device. There are things described where you may run -- the device may run another application, but *never is the application loaded into one of the other processors when you plug this device in*.

Kubehl Decl. Ex. E, at 15 (emphasis added).

On March 26, 2015, the jury returned a verdict on Eagle Harbor's claims of infringement, Ford's claims of invalidity and trade secrets misappropriation, and damages. Verdict Form, Prior Litigation, ECF No. 648. The jury reached the verdict that Claim 1 of the '119 Patent was invalid for inadequate written description. *Id*. at 3. On March 31, 2015, the court entered judgment on the verdict. J. in a Civil Case, Prior Litigation, ECF No. 653. The parties subsequently filed motions for judgment as a matter of law. Prior Litigation, ECF Nos. 631, 634, 669, 673. On September 11, 2015, the parties jointly filed a Stipulation and Proposed Order of  Dismissal notifying the court that they had "settled all disputes at issue in this litigation and hereby stipulate to entry of an order by the Court dismissing all claims and counterclaims in the litigation with prejudice." Prior Litigation, ECF No. 707. The court subsequently entered a Stipulation and Order of Dismissal on September 15, 2015. Prior Litigation, ECF No. 708.

### B.  Assignment of Asserted Patents from Eagle Harbor to MicroPairing

Plaintiff MicroPairing Technologies LLC is the successor-in-interest to the patents asserted in the Prior Litigation and the patents asserted here. The public assignment records show a transfer of those patents (along with other patents) from Eagle Harbor to Northwater Intellectual Property Fund LP 2 (Kubehl Decl. Ex. A), then an assignment to 2230755 Alberta Ltd. (Kubehl Decl. Ex. B), which changed its name to MicroPairing Technologies Ltd. (Kubehl Decl. Ex C), and thereafter

assigned the patents to Plaintiff MicroPairing Technologies LLC (Kubehl Decl. Ex D).[3]

### C. The '136 Patent Has the Same Disclosure as, and the '292 and '816 Patents Have a Narrower Disclosure than, the Invalid '119 Patent

The '136 Patent is the parent of the invalid '119 Patent, and therefore has the identical disclosure already adjudicated to lack support for the "downloading or moving" limitations. Second Am. Compl. Ex. I at 11, Prior Litigation, ECF No. 61. Both the '136 and '119 Patents incorporate by reference the entire disclosure of the '292 and '816 Patents, by virtue of incorporating by reference the disclosure of U.S. Patent No. 7,146,260 (the "'260 Patent"), which is the parent of the '292 (Compl., Ex. 7, at 2), and '816 (Compl., Ex. 5, at 2) Patents. The disclosure of the '292 and '816 Patents, therefore, is a portion of the broader written description of the '119 Patent, which already has been adjudicated as failing to provide written description support for the "downloading or moving" limitations.

### D. MicroPairing's Asserted Claims Include the Same Limitations Found to Lack Written Disclosure Support in the Prior Litigation

The invalidity ruling in the Prior Litigation was based on the claim's unsupported recitation of storing an application, connecting a device, and downloading the application when the device is connected. Kubehl Decl. Ex. E, at 15 (Ford expert testimony); Verdict Form, Prior Litigation, ECF No. 648; J. in a Civil Case, Prior Litigation, ECF No. 653. The claims of the '292, '136, and '816 Patents recite these same unsupported features.[4] Exhibit 1 to this motion provides charts

---

[3] This data is publicly available from the US Patent and Trademark assignment database at https://assignment.uspto.gov/patent/index.html#/patent/search. For the Court's convenience, exhibits have been provided.

[4] All independent claims of the '292, '136 and '816 Patents include the "downloading or moving" limitations. See Ex. 1. In its Complaint, MicroPairing has alleged infringement of "at least" independent Claim 1 of the '292 Patent, and certain of its dependent claims; independent Claim 31 of the '136 Patent; and independent Claim 17 of the '816 Patent, and its dependent claims. To the extent MicroPairing asserts any of the other claims, identified in Ex. 1, Toyota moves to dismiss those allegations for the same reasons set forth herein.

showing the entirety of Claim 1 of the '119 Patent compared to the entirety of each independent claim of the '292, '136, and '816 Patents, as well as other claims that recite these limitations. The text below focuses on where the "download or moving limitation" found to lack support in the '119 Patent appears in each of the three independent claims of the '292, '136, and '816 Patents asserted in the Complaint.

For example, Claim 1 of the '292 Patent recites nearly identical language to invalid Claim 1 of the '119 Patent (emphasis added):

| Claim 1 of the '119 Patent | Claim 1 of the '292 Patent |
| --- | --- |
| A processor apparatus, comprising: . . . connect the new device to the processing system when signaling from the new device conforms to a communication protocol used in the processing system; . . . identify at least one stored application in memory accessible by the processor, wherein the application processes the same data type used by the new device; responsive to identifying the stored application, download the stored application from memory into the processing system; . . . . | A system of multiple processors used in a vehicle . . . comprising: . . . connect the new device to the vehicle processor when signaling from the new device conforms to a communication protocol used in the vehicle processor; . . . identify a stored application in memory accessible by the processor, wherein the application processes the same data type used by the new device; responsive to identifying the stored application, download the stored application from memory into the processor; . . .. |

Similarly, Claim 31 of the '136 Patent recites nearly identical language to invalid Claim 1 of the '119 Patent (emphasis added):

| Claim 1 of the '119 Patent | Claim 31 of the '136 Patent |
| --- | --- |
| A processor apparatus, comprising: . . . connect the new device to the processing system when signaling from the new device conforms to a communication protocol used in the processing system; . . . identify at least one stored application in memory accessible by the processor, wherein | An apparatus, comprising: . . . connect the new device to the multiprocessor system when signaling from the new device conforms to a communication protocol used in the multiprocessor system; . . . identify a stored application in memory in the multiprocessor system that uses the same data |

| Claim 1 of the '119 Patent | Claim 31 of the '136 Patent |
|---|---|
| the application processes the same data type used by the new device;<br>responsive to identifying the stored application, download the stored application from memory into the processing system;<br>. . .. | type used on the new device and<br><br>download the stored application from memory into a processor in the multiprocessor system;<br>. . .. |

Finally, Claim 17 of the '816 Patent, although using alternate terminology, recites the same

concepts found to be unsupported in invalid Claim 1 of the '119 Patent (emphasis added):

| Claim 1 of the '119 Patent | Claim 17 of the '816 Patent |
|---|---|
| A processor apparatus, comprising:<br>. . .<br>connect the new device to the processing system when signaling from the new device conforms to a communication protocol used in the processing system;<br>. . .<br>identify at least one stored application in memory accessible by the processor, wherein the application processes the same data type used by the new device;<br>responsive to identifying the stored application, download the stored application from memory into the processing system;<br>. . .. | A vehicle audio system, comprising:<br>a wireless transceiver configured to sense the availability of a wireless audio device that is located within or proximate to the vehicle and<br>logic circuitry configured to:<br>identify the wireless audio device record<br>. . .<br>wherein the wireless device record includes previously identified data codes from the wireless audio device and from a first software application running on the wireless audio device;<br>responsive to identifying the data codes and first software application running on the wireless audio device from the stored record, download a copy of a second software application selected from the memory and process data from the wireless audio device with the second software application; |

Although Claim 17 of the '816 Patent does not explicitly recite connecting to the new

device, that feature is implicit in the claim's requirement that data codes and software applications

running on the devices must be identified. This claim plainly recites that software applications

must be stored and, in response to detecting (and inherently, connecting to) the new device, these

stored software applications are downloaded.

### E.  MicroPairing's Allegations of Indirect Infringement in This Litigation

In its Complaint, MicroPairing also alleges Toyota indirectly infringes Claims 1-4, 6, and 10-16 of the '816 Patent (Compl. ¶ 89), and Claims 1-11, 13-14, and 16 of the '015 Patent (Compl. ¶ 102) "by inducing direct infringement by its Toyota Tacoma and Tundra customers and end users" (Compl. ¶¶ 87, 100). However, MicroPairing relies solely on the filing of the Complaint to support its allegations of knowledge: "Toyota Texas has knowledge of the '816 [and '015] patent[s], [their] infringement [], and the infringements of its customers and end users based, at least, on its receipt of this Complaint." (Compl. ¶¶ 88, 101). MicroPairing also provides generic allegations and legal conclusions regarding willful blindness and specific intent:

> Despite having knowledge (or being willfully blind to the fact) that use of the Toyota Tundra and/or Tacoma infringe[] the '816 [and '015] patent[s], Toyota Texas has specifically intended, and continues to specifically intend, for persons who acquire and/or use Tundras or Tacomas, including Toyota Texas's customers and end users, to use their Tundras or Tacomas in a way that results in infringement of the '816 [and '015] patent[s].... Indeed, Toyota Texas knew or should have known that its actions have induced, and continue to induce, such infringements.
> . . .
> Toyota Texas instructs and encourages customers and end users to use Toyota Tundras and/or Tacomas in a manner that infringes the '816 [and '105] patent[s]. For example, Toyota Texas provides users with a "Toyota 2020 Tundra Navigation and Multimedia System Owner's Manual" [], which guides users with instructions on how to use the infotainment system in a way that results in infringement of the '816 [and '015] patent[s].

(Compl. ¶¶ 89-90, 102-103). MicroPairing does not allege that Toyota had knowledge of any of the patents prior to the filing of this Complaint.

## II.    LEGAL STANDARD

### A.  Legal Standard for Motion to Dismiss based on Issue Preclusion

A court may dismiss with prejudice claims barred by issue preclusion for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). *See Allergan, Inc. v. Sandoz, Inc.*, 681 F. App'x 955, 958, 959–962 (Fed. Cir. 2017) (affirming dismissal with prejudice

pursuant to Rule 12(b)(6) on issue preclusion grounds); *Arunachalam*, 2019 WL 10303695, at *4 (granting motion to dismiss based on issue preclusion, where claims of asserted patent were substantially similar to claims of patents previously held invalid for lack of written description); *Arunachalam v. Intuit, Inc*., No. 6:19-CV-00172-ADA, ECF No. 28 (W.D. Tex. July 15, 2019) (same). "Collateral estoppel protects a party from having to litigate issues that have been fully and fairly tried in a previous action and adversely resolved against a party-opponent." *Arunachalam v. Exxon Mobil Corp.*, 2019 WL 10303695, at *1.

Regional circuit law applies to the procedural question of whether claims are barred by issue preclusion, but Federal Circuit precedent applies to aspects of the determination that involve substantive issues of patent law. *See Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1314 (Fed. Cir. 2015). The Fifth Circuit considers four factors in determining whether to give preclusive effect to an issue: (1) the issue under consideration in a subsequent action must be identical to the issue in a prior action; (2) the issue must have been fully and vigorously litigated in the prior action; (3) the issue must have been necessary to support the judgment in the prior case; and (4) there must be no special circumstance that would render preclusion inappropriate or unfair. *Id.* at 1315 (quoting *State Farm Mut. Auto. Ins. Co. v. LogistiCare Solutions, LLC*, 751 F.3d 684, 689 (5th Cir. 2014)).

### B.  Legal Standard for Motion to Dismiss Indirect Infringement Claims

To survive a motion to dismiss, a complaint must contain sufficient facts, which if accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Conclusory allegations or "a

formulaic recitation of the elements of a cause of action will not do." *Id*.

A sufficient pleading for a claim of induced infringement must allege facts showing that the accused infringer: (1) had actual knowledge of the patents; (2) knowingly induced its customers and end users to infringe the patents; and (3) had specific intent to induce the infringement of the patents. *Iron Oak Techs., LLC v. Acer Am. Corp.,* No. 6:17-CV-143-RP-JCM, 2017 WL 9477677, at *4 (W.D. Tex. Nov. 28, 2017). "[I]nduced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011). In order to meet the pleading standards in *Iqbal* and *Twombly*, a claim of induced infringement "must contain facts plausibly showing that [the defendant] specifically intended [its] customers to infringe the [asserted] patent and knew that the customer's acts constituted infringement." *Affinity Labs of Texas, LLC v. Toyota Motor North America*, No. 6:13-CV-365-JCM, 2014 WL 2892285, at *3 (W.D. Tex. May 12, 2014).

## III.    ARGUMENT

### A.  MicroPairing is Precluded from Relitigating the Validity of the '292, '136, and '816 Patents.

MicroPairing has asserted infringement of at least Claim 1 of the '292 Patent, Claim 31 of the '136 Patent, and Claim 17 of the '816 Patent. The validity of these claims (and all claims in these patents) has been litigated and decided by a verdict and judgment in the Prior Litigation. [5] As such, MicroPairing is precluded from litigating this issue again.

### 1.  *This case involves invalidity issues identical to the issue in the Prior Litigation.*

The basis for invalidity of Claim 1 of the '119 Patent in the Prior Litigation is the same as the basis for invalidity of Claim 1 of the '292 Patent, Claim 31 of the '136 Patent, and Claim 17

---

[5] All the independent claims of the '292, '136 and '816 Patents include the "downloading or moving" limitations. *See* Ex. 1.

of the '816 Patent, and their respective dependent claims. The jury in the Prior Litigation reached the verdict that Claim 1 of the '119 Patent was invalid because "it did not contain an adequate written description." Verdict Form, Prior Litigation, ECF No. 648. During the trial, Ford's invalidity expert argued Claim 1 of the '119 Patent was invalid because the specification does not describe the "*downloading or moving" limitations*. Kubehl Decl. Ex. E, at 14 (emphasis added). He explained that "a description of *moving or downloading applications* in response to *connecting a device*" was necessary, but not provided, in the disclosure of the '119 Patent. *Id*. He testified that "there are aspects of these claims that are not disclosed by [the] description of the patent itself or the patents that it includes by reference." *Id*. at 14. "The primary one" is "the downloading or moving limitation[s]." *Id*. "So you have an application stored somewhere. You connect the device, and then you move applications. Well nowhere in this patent is that described." *Id*. at 15. "[N]ever is the application loaded into one of the other processors when you plug this device in." *Id*.

The same issue is in play here where two of the patent claims asserted by MicroPairing in its Complaint include near-identical claim limitations, and a third includes the same limitations, although expressed using alternate terminology. Claim 1 of the '292 Patent claims a system of multiple processors in a vehicle with a processor that is configured to identify a new device not currently connected to the vehicle processor; *connect the new device* to the vehicle processor; and as part of the process of connecting the new device, identify a stored application in memory accessible by the processor, *download the stored application from memory into the process*or, and use the application to process data received from the newly connected device. (Compl., Ex. 7, at 8:60-9:23). Similarly, Claim 31 of the '136 Patent claims a multiprocessor system with a processor configured to identify a device not currently coupled to the system; *connect the new device* to the system; and as part of the process of connecting the new device, identify a stored application in

memory accessible by the processor, *download the stored application from memory into the processor*, and use the application to process data received from the newly connected device. (Compl., Ex. 3 at 10:13-24, 10:33-36).

As to Claim 17 of the '816 Patent, though it uses alternative terms, the claimed functionality is the same. This claim recites a vehicle audio system comprising, among other components, a wireless transceiver configured to sense a wireless audio device close to the vehicle and to identify data codes, and software applications running on the wireless audio device. (Compl., Ex. 5 at 10:20-58). The claim also recites logic circuitry performing the downloading of stored software applications in response to identifying software and data codes obtained from connecting to the wireless device and processing data from the device. (*Id.*, 10:27-40). This assumes that the device has already been connected, otherwise the system would not be able to receive data from the device. The specification does not use the term logic circuitry, however the components that are discussed for performing the claimed function are "[a] dedicated processor system, micro controllers, programmable logic devices, or microprocessors." (*Id.* at 8:47-49). As in the invalid Claim 1 of the '119 Patent, the logic circuitry (or processor) downloads a software application from memory in response to identifying the connected device. (*Id.* at 10:37-40).

All of the asserted claims involve connecting a new device, identifying a stored application, downloading the stored application from memory into the processor and using the stored application to process data. None of the disclosures of the '119, '292, '136, or '816 Patents describe downloading an application from memory into a processor in response to connecting a new device. As Ford's expert noted in the Prior Litigation, the scope of the disclosures at issue in the invalidity analysis included not just the '119 specification, but also the '260 specification, so he "look[ed] to '260 and '119 to see if these limitations are actually described" there. Kubehl Decl. Ex. E, at 14.

He testified at trial that in the disclosures "there's no description of downloading or moving an application in response to connecting a new device." *Id*. at 26. Importantly, the '292, '136, and '816 Patents do not include any additional disclosures beyond what was litigated regarding the '119 Patent. The '119 Patent is a continuation of the '136 Patent; so the '136 Patent contains exactly the same disclosure found inadequate in the Prior Litigation. And the entire disclosures of the '292 and '816 Patents are incorporated by reference (via incorporation of the parent '260 Patent) into the '119 Patent. Therefore, the disclosures of the '292 and '816 Patents are even more narrow than the inadequate disclosure of the '119 Patent.

The same issue that was litigated in the Prior Litigation is present here. Given the relevant claim limitations are the same and the scope of the disclosures are either the same or narrower than the '119 Patent, the same result follows. It is of no matter that the cases involve different patents or different claims. *See Arunachalam*, 2019 WL 10303695, at *4 (granting a motion to dismiss based on issue preclusion, where claims of asserted patent were substantially similar to claims of patents previously held invalid for lack of written description). "Complete identity of [patent] claims is not required to satisfy the identity-of-issues requirement for claim preclusion." *Soverain Software*, 778 F.3d at 1319; *see also Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013) ("[I]t is the identity of the *issues* that were litigated that determines whether collateral estoppel should apply.") Any minor differences in the systems claimed in which the functionality at issue exists, "do not materially alter the question of invalidity." *Id*. And if MicroPairing asserts that a relevant difference exists between the adjudicated and unadjudicated patent claims, it bears the burden of establishing that such differences would change the invalidity analysis. *See Soverain Software*, 778 F.3d at 1319.

Because the differences between Claim 1 of the '119 Patent and Claim 1 of the '292 Patent,

Claim 31 of the '136 Patent, and Claim 17 of the '816 Patent "do not materially alter the question of invalidity, collateral estoppel applies." *Allergan, Inc.,* 681 F. App'x. at 960.

2. *The invalidity issue was fully and vigorously litigated in the Prior Litigation.*

The issue of the invalidity of Claim 1 of the '119 Patent was fully litigated in the Prior Litigation. Ford asserted the counterclaim of invalidity of the '119 Patent in response to Eagle Harbor's amended complaint and both parties litigated those counterclaims through trial. Ford maintained its counterclaim of invalidity for Claim 1 of the '119 Patent throughout the Prior Litigation and through verdict. Invalidity of Claim 1 of the '119 Patent on the grounds of inadequate written description was presented to the jury, the jury rendered a verdict, and the court entered judgment on that verdict. Both sides filed post-trial motions and could have chosen to accept the court's final judgment or appeal. Eagle Harbor instead chose to seek a dismissal of all claims with prejudice.

3. *The invalidity finding was necessary to support the judgment in the Prior Litigation.*

Ford's expert provided testimony on the written description issue, and Eagle Harbor's expert rebutted that testimony. The jury assessed the evidence presented and returned a verdict that Claim 1 of the '119 Patent was invalid for inadequate written description. Verdict Form at 3, Prior Litigation, ECF No. 648. The court entered a judgment based on the jury's verdict. J. in a Civil Case, Prior Litigation, ECF No. 653. The issue of validity of Claim 1 of the '119 Patent was necessary to support the judgment because Ford specifically asserted a counterclaim of invalidity, independent from any allegations of infringement and defenses thereto. *See Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 96 (1993) (stating that a party seeking a judgment of invalidity "presents a claim independent of the patentee's charge of infringement").

The jury's verdict on the invalidity counterclaim was a conclusive judgment on a fully

litigated issue. *See Soverain*, 778 F.3d at 1313–14 (finding preclusive effect of jury verdict of invalidity in a later district court case); *see also Wheeler v. Kidder Peabody & Co., Inc*., No. 92-2930, 1993 WL 455869, at *2 (5th Cir. Oct. 26, 1993) ("This circuit requires 'judicial finality' before collateral estoppel can be invoked; nevertheless, 'finality' does not require a final judgment, but only that the issue has been 'fully litigated.'"). Despite the parties' settlement in the Prior Litigation, issue preclusion still applies here where Ford's invalidity counterclaim based on written description was fully and vigorously litigated at a trial on the merits, a verdict was issued by a jury, and judgment entered on the verdict, and the Court entered a dismissal with prejudice. *See Bowman v. Daiichi Pharms., Inc*., No. 1:09-CV-00013-SS, 2009 WL 10699960, at *2 (W.D. Tex. Mar. 11, 2009) (treating a dismissal with prejudice as a final judgment on the merits entitled to res judicata effect).

### 4. *There are no special circumstances that would render preclusion inappropriate or unfair.*

There are no special circumstances that would apply to prevent the application of issue preclusion. "While complete identity of all parties is not required, the party against whom the collateral estoppel would be applied generally must either have been a party, or privy to a party, in the prior litigation." *Vines v. Univ. of Louisiana at Monroe*, 398 F.3d 700, 705 (5th Cir. 2005). Though MicroPairing was not itself involved in the Prior Litigation, it was in privity with Eagle Harbor, its predecessor-in-interest. *See Taylor v. Sturgell*, 553 U.S. 880, 894 (2008) (stating that nonparty preclusion may be justified based on "relationships [that] include, but are not limited to, preceding and succeeding owners of property . . . and assignee and assignor"). Specifically, MicroPairing acquired the patents through a chain of transfers and patent assignments: the patents were transferred from Eagle Harbor to Northwater Intellectual Property Fund L.P. 2, which assigned the patents to 2230755 Alberta Ltd., which changed its name to MicroPairing

15

Technologies Ltd., and then assigned the patents to MicroPairing Technologies LLC. Kubehl Decl. Ex. A, B, C, D.

In addition to the successor-predecessor relationship, MicroPairing as a party whose interests were adequately represented by Eagle Harbor, a party in the original suit, was in privity with Eagle Harbor. *See, e.g., Watts v. XL Sys., L.P.*, No. 1:06-CV-653LY, 2008 WL 5731945, at *5 (W.D. Tex. July 2, 2008) ("The Fifth Circuit articulates, privity exists . . .where the non-party's interests were adequately represented by a party to the original suit.'").

### B. MicroPairing's Claims of Indirect Infringement are Deficient and Should be Dismissed

MicroPairing alleges that Toyota indirectly infringes claims 1-4, 6, and 10-16 of the '816 Patent and claims 1-11, 13-14, and 16 of the '015 Patent by inducing infringement by customers and end users of its Toyota Tacoma and Tundra trucks. (Compl. ¶¶ 87, 100). Because MicroPairing fails to allege pre-suit knowledge of the '816 and '015 Patents, or specific intent by Toyota to induce infringement of these patents, MicroPairing's claims of induced infringement should be dismissed.

### 1. *MicroPairing Fails to Allege Knowledge of the '816 and '015 Patents.*

As a threshold issue, a claim of indirect infringement must adequately plead the basis for knowledge of the existence and alleged infringement of the '816 and '015 Patents. *See Aguirre v. Powerchute Sports, LLC*, No. SA–10–CV–702–XR, 2011 WL 3359554, at *5 (W.D. Tex. Aug. 4, 2011) ("Absence of knowledge is a fatal flaw in a claim for indirect patent infringement."). MicroPairing does not allege any facts supporting an allegation of pre-suit knowledge of the '816 and '015 Patents. Instead, MicroPairing alleges Toyota has knowledge of the '816 and '015 Patents, their "infringement, and the infringements of its customers and end users based, at least, on its receipt of this Complaint." (Compl. ¶¶ 88, 101). But the filing of the Complaint in October

16

2020 does not impart to Toyota pre-suit knowledge of the existence of the '816 and '015 Patents. Absent any allegations that Toyota had pre-suit knowledge of the '816 and '015 Patents, MicroPairing's claims of *pre-suit* indirect infringement are nonstarters. *See* Text Order Granting Mot. to Dismiss *Castlemorton Wireless, LLC v. Comcast Corp.,* No. 6:20-CV-00034-ADA (W.D. Tex. Jul. 25, 2020) (dismissing the plaintiff's pre-suit induced infringement claims for failure to plead sufficient facts that would support an allegation of pre-suit knowledge).

MicroPairing's claims of post-suit induced infringement also fail. Consistent with Supreme Court precedent in *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011), this Court consistently has held that claims of indirect infringement that rely on a complaint to supply the only alleged knowledge of the asserted patents fail to meet the pleading standard for induced infringement and must be dismissed. *See, e.g., Parus Holdings Inc. v. Apple Inc.*, No. 6:19-CV-00432-ADA, ECF No. 101 (W.D. Tex. Jan. 31, 2020) (granting motion to dismiss plaintiff's claims of induced infringement where plaintiff had alleged defendant's "knowledge" "[a]t least as of the filing of the original complaint"); *Affinity Labs*, 2014 WL 2892285, at *4-5, 8 (dismissing claims of induced infringement where plaintiff relied on the complaint to allege knowledge).

MicroPairing's Complaint also includes generalized allegations that Toyota was "willfully blind" to the infringement of the '816 and '015 Patents by its Toyota Tacoma and Tundra vehicles. (Compl. ¶¶ 89, 102). These allegations are also deficient. To adequately plead that Toyota was willfully blind to the infringement of the'816 and '015 Patents, MicroPairing must allege that Toyota "(1) [] subjectively believed that there was a high probability that the infringing technology was patented and (2) [] acted deliberately to avoid learning of that fact." *Affinity Labs*, 2014 WL 2892285, at * 3. MicroPairing fails to allege *any* facts from which one could infer there was any such subjective belief, much less that Toyota took any action to deliberately avoid discovering the

existence of the '816 and '015 Patents, or avoid discovering that any features of Toyota Tacoma or Tundra vehicles infringed the '816 and '015 Patents. This Court has dismissed allegations of indirect infringement where the factual allegations in support of willful blindness were "insufficient to meet the test of willful blindness." *See VLSI Tech., LLC v. Intel Corp*., No. 6:19-CV-254-ADA, 2019 WL 11025759, at *1 (W.D. Tex. Aug. 6, 2019) (dismissing claims of indirect infringement for failure to satisfy the knowledge requirement where factual allegations included defendant's policy forbidding employees from reading third-party patents). Here, MicroPairing provides *no* factual support for its generalized allegations of knowledge and willful blindness.

MicroPairing's failure to adequately plead knowledge of the '816 and '015 Patents, either actual knowledge or willful blindness, is fatal to its induced infringement claims.

> 2. *MicroPairing Fails to Allege Toyota Specifically Intended to Induce Infringement of the '816 and '015 Patents.*

MicroPairing also fails to plead facts from which it could be inferred that Toyota had the necessary specific intent to induce infringement. A claim of induced infringement "must contain facts plausibly showing that [the defendant] specifically intended [its] customers to infringe the ['816 and '015 Patents] and knew that the customers' acts constituted infringement." *Joao Control & Monitoring Sys., LLC v. Protect Am., Inc*., No. 1-14-CV-134-LY, 2015 WL 3513151, at *4 (W.D. Tex. Mar. 24, 2015). "[T]he mere knowledge of possible infringement of a patent by others does not amount to inducement." *Iron Oak Techs., LLC v. Acer Am. Corp*., No. 6:17-CV-143-RP-JCM, 2017 WL 9477677, at *4 (W.D. Tex. Nov. 28, 2017) (citing *Global-Tech Appliances, Inc. v. SEB S.A*, 563 U.S. 754, 766 (2011)). "Specific intent and action to induce infringement" is necessary; there must be some allegation by MicroPairing that Toyota took "affirmative steps to bring about the desired result [of infringement]." *Id*. (quoting *Global-Tech*, 563 U.S. at 760).

MicroPairing alleges that Toyota has "specifically intended, and continues to specifically

intend," for people "who acquire and/or use Tundras or Tacomas, including Toyota Texas's customers and end users, to use their Tundras or Tacomas in a way that results in infringement" of the '816 and '015 Patents. (Compl. ¶¶ 89, 102). According to MicroPairing, "Toyota Texas instructs and encourages customers and end users to use Toyota Tundras or Tacomas in a manner that infringes the ['816 and '015 Patents]." (Compl. ¶¶ 90, 103). MicroPairing asserts that "Toyota Texas provides users with a 'Toyota 2020 Tundra Navigation and Multimedia System Owner's Manual' [], which guides users with instructions on how to use the infotainment system in a way that results in infringement of the" '816 and '015 Patents. *Id*. Based on these generic allegations, MicroPairing asserts—without any factual support—that Toyota had the specific intent to induce infringement. But providing customers with an owners' manual is not an affirmative action to induce infringement. *See Hypermedia Navigation LLC v. Google LLC*, No. 18-CV-01637-HSG, 2019 WL 1455336, at *2 (N.D. Cal. Apr. 2, 2019) (dismissing claims of induced infringement holding that a plaintiff's allegations making "passing references to user manuals guides, and support articles" are not the kind of allegations that can be relied on to infer specific intent). MicroPairing fails to allege *how* Toyota providing its customers with a user manual to use products they have purchased supports an inference of specific intent to induce infringement. *See id.* at *3 (noting "the complaint only states bald conclusions that an end user following YouTube instructions results in infringement" and fails to "detail *how* an end user would infringe Hypermedia's patents by following instructions in the link") (emphasis in original). Put simply, the Complaint does not include any facts supporting an inference of specific intent.

Instead, MicroPairing resorts to generic allegations of "instruct[ing]" and "encourage[ing]," but these "naked assertions" of specific intent, "devoid of further factual enhancement" cannot withstand a motion to dismiss. *Iron Oak Techs., LLC,* 2017 WL 9477677,

at *5-6. Indeed, similar allegations have been considered and dismissed by the Federal Circuit and this Court as failing to meet the pleading standard for specific intent. *See, e.g.*, *Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 F. App'x 934, 938 (Fed. Cir. 2015) (affirming dismissal of indirect infringement claims noting that induced infringement may not be pled by simply setting forth conclusory allegations that a defendant "acted with specific intent" or acted to "urge, instruct, [and/or] encourage" infringement); *see also Affinity Labs*, 2014 WL 2892285, at *7 (holding that plaintiff's unsupported allegations that Toyota has 'encouraged and is encouraging' its customers to infringe the Asserted Patents by marketing and selling it automobiles with sound systems failed to support the standards for induced infringement).

MicroPairing's generalized allegations of specific intent mirror these inadequate recitations without any supporting facts. Without any factual basis from which the Court could infer that Toyota had the specific intent to induce infringement, MicroPairing's allegations of induced infringement cannot meet the standards set forth by *Iqbal* and *Twombly*.

## IV.   CONCLUSION

Because the validity of Claim 1 of the '292 Patent, Claim 31 of the '136 Patent, and Claim 17 of the '816 Patent has been litigated, issue preclusion precludes MicroPairing from relitigating the issue again in this case. These claims and their dependent claims should be dismissed.

MicroPairing has failed to plead facts that would make it plausible that Toyota knew of the '816 and '015 Patents, or specifically intended that its customers would infringe these patents. Accordingly, MicroPairing's claims of induced infringement also should be dismissed.

Dated: January 5, 2021

Respectfully submitted,

By: /s/ *Douglas M. Kubehl* _____

Douglas M. Kubehl
Texas Bar No. 00796909
doug.kubehl@bakerbotts.com
Christa Brown-Sanford **(Lead Attorney)**
Texas Bar No. 24045574
christa.sanford@bakerbotts.com
**BAKER BOTTS L.L.P.**
2001 Ross Avenue
Dallas, Texas 75201
Telephone: (214) 953-6500
Facsimile: (214) 953-6503


***Counsel for Defendant Toyota Motor
Manufacturing Texas, Inc.***

## **CERTIFICATE OF SERVICE**

I hereby certify that counsel of record who are deemed to have consented to electronic service were served Defendant's Motion to Dismiss on January 5, 2021, via email.

*/s/ Douglas M. Kubehl* _____
Doug Kubehl