IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **MICROPAIRING TECHNOLOGIES LLC,** §<br>*Plaintiff,* §<br>§<br>v. §<br>§<br>**TOYOTA MOTOR MANUFACTURING TEXAS, INC.,** §<br>*Defendant.* § | 6-20-CV-01001-ADA |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Toyota Motor Manufacturing Texas, Inc.'s ("Toyota") Motion to Transfer Venue (ECF No. 24) to the San Antonio Division of the Western District of Texas pursuant to 28 U.S.C. § 1404(a). After careful consideration of the parties' briefs and the applicable law, the Court **GRANTS** Toyota's motion.

### I. BACKGROUND

Plaintiff MicroPairing Technologies LLC ("MicroPairing") filed this lawsuit against Toyota on October 28, 2020, alleging infringement of U.S. Patent Nos. 6,629,033, 6,778,073, 7,793,136, 8,380,383, 8,953,816, 9,697,015, and 8,583,292 (collectively, the "Asserted Patents"). ECF No. 1. MicroPairing also sued General Motors LLC ("GM") in this District, alleging that GM infringes the Asserted Patents. *MicroPairing Techs. LLC, v. General Motors LLC*, No. 6:20-CV-1002 (W.D. Tex. Oct. 28, 2020) (the "GM Case"). ECF No. 1.

Toyota filed the instant Motion to Transfer under 28 U.S.C. § 1404(a), requesting that this case be transferred from the Waco Division of the Western District of Texas ("WDTX") to

1

the San Antonio Division of the Western District of Texas. ECF No. 24. The Motion has been subsequently fully briefed by the parties. ECF Nos. 39 (Response) and 40 (Reply).

MicroPairing is a Texas limited liability company with its principal place of business also in Texas. ECF No. 1 at ¶ 1 Toyota Motor Manufacturing Texas is a Texas corporation with a regular and established place of business in San Antonio. ECF No. 1 at ¶ 2-3.

## II. LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). 28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, . . . a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." *Id*. "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The preliminary question under Section 1404(a) is whether a civil action "might have been brought" in the transfer destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201,

2

203 (5th Cir. 2004) ("*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on the situation which existed at the time of filing, rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

The burden to prove that a case should be transferred for convenience falls squarely on the moving party. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010). The burden that a movant must carry is not that the alternative venue is more convenient, but that it is clearly more convenient. *Volkswagen II*, 545 F.3d at 314 n.10. Although the plaintiff's choice of forum is not a separate factor entitled to special weight, respect for the plaintiff's choice of forum is encompassed in the movant's elevated burden to "clearly demonstrate" that the proposed transferee forum is "clearly more convenient" than the forum in which the case was filed. *In re Vistaprint Ltd.*, 628 F.3d at 314–15. While "clearly more convenient" is not necessarily equivalent to "clear and convincing," the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019).

### III. ANALYSIS

The threshold determination under the Section 1404 analysis is whether this case could initially have been brought in the transferee venue—here, the San Antonio Division. Neither party contests that venue is proper in the San Antonio Division and that this case could have

been brought there. Thus, the Court proceeds with its analysis of the private and public interest factors as provided in *Volkswagen I*.

**A. Private Interest Factors**

*i. The Relative Ease of Access to Sources of Proof*

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). Witnesses are not sources of proof to be analyzed under this factor; rather, analyses pertaining to witnesses are assessed under the second or third private factors. *In re Apple Inc.*, 979 F.3d 1332, 1339 (Fed. Cir. 2020) ("This factor relates to the ease of access to non-witness evidence, such as documents and other physical evidence."); *Netlist, Inc. v. SK hynix Inc. et al*, No. 6:20-cv-00194-ADA, ECF No. 87 at 11 (W.D. Tex. Feb. 2, 2021) ("The first private factor, ease of access to sources of proof, considers 'documents and physical evidence' *as opposed to witnesses*.") (emphasis added).

Although the physical location of electronic documents does affect the outcome of this factor under current Fifth Circuit precedent (*see Volkswagen II*, 545 F.3d at 316), this Court has stressed that the focus on physical location of electronic documents is out of touch with modern patent litigation. *Fintiv*, 2019 WL 4743678, at *8; *Uniloc 2017 LLC v. Apple Inc.,* 6-19-CV-00532-ADA, 2020 WL 3415880, at *9 (W.D. Tex. June 22, 2020) ("[A]ll (or nearly all) produced documents exist as electronic documents on a party's server. Then, with a click of a mouse or a few keystrokes, the party [can] produce[] these documents" and make them available at almost any location.). Other courts in the Fifth Circuit similarly found that access to

4

documents that are available electronically provides little benefit in determining whether a particular venue is more convenient than another. *See, e.g., Uniloc USA Inc. v. Samsung Elecs. Am.*, No. 2:16-cv-642-JRG, 2017 U.S. Dist. LEXIS 229560, at *17 (E.D. Tex. Apr. 19, 2017) ("Despite the absence of newer cases acknowledging that in today's digital world computer stored documents are readily moveable to almost anywhere at the click of a mouse, the Court finds it odd to ignore this reality in favor of a fictional analysis that has more to do with early Xerox machines than modern server forms."); *see also LBS Innov'ns LLC v. Apple Inc.*, 2020 WL 923887, at *5 (E.D. Tex. Feb. 26, 2020). However, where a party has a campus in a transferee district and no major presence in the district where the complaint was brought, the factor weighs in favor of transfer. *VLSI Tech. LLC v. Intel Corp.*, 2019 WL 8013949, at *3 (W.D. Tex. 2019) (granting transfer where "Intel has a campus in Austin, but not in Waco, [making] it [] easier to access Intel's electronic documents from Austin than from Waco").

MicroPairing contends that the bulk of relevant evidence is stored in Plano rather than San Antonio. ECF No. 39 at 4-8. MicroPairing cites to interrogatory responses from Toyota stating that relevant technical, marketing, and financial documents are in the possession of other Texas-based Toyota entities outside of San Antonio. ECF No. 39 at 4-5. MicroPairing fails however to contend that any evidence itself is in Waco, but rather that it is closer to, and more accessible from, Waco as opposed to San Antonio. ECF No. 39 at 4. However, this court has held that the relevant documentary evidence outside of both forums is irrelevant when comparing the relative ease of access between divisions in an intra-district transfer. *WSOU Investments, LLC v. Microsoft Corp.*, 2021 WL 1298935, at *3 (W.D. Tex. 2021); *see also In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014) ("the comparison between the transferor and

transferee forums is not altered by the presence of other witnesses and documents in places outside both forums.").

Toyota conversely contends that it has identified specific relevant documents and witnesses in San Antonio. ECF No. 40 at 1. Toyota argues that "the people that are knowledgeable about [the sales of the accused products] … live in and around San Antonio." ECF No. 40 at 1. Toyota further states that all evidence related to the manufacturing of the accused vehicles and its use of the accused vehicles is in San Antonio, including "quality inspection sheets, standard operating procedures, standardized work documents, quality control documents, quality manuals, and process manuals." ECF No. 40 at 1. In response to MicroPairing's contention that documents stored in Plano would be easier accessed from Waco than San Antonio, Toyota argues that the documents are more accessible from San Antonio, where it maintains a large campus. The presence of physical facilities does indeed suggest that it is easier for Toyota to access documents in San Antonio rather than Waco. *See VLSI Tech. v. Intel, 2019 WL 8013949*, at \*3 (granting Intel's intra-district motion to transfer from the Waco Division to the Austin Division in part because Intel had a campus in Austin). In view of the above, the Court finds that this factor is in favor of transfer.

### ii. The Availability of Compulsory Process to Secure the Attendance of Witnesses

For this factor, the Court considers particularly non-party witnesses whose attendance may need to be secured by a court order. *Fintiv*, 2019 WL 4743678, at \*5 (citing *Volkswagen II*, 545 F.3d at 316); *Uniloc,* 2020 WL 3415880, at \*10. This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple, Inc.*, 581 F. App'x. 886, 889 (Fed. Cir. 2014). Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the

person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015).

Neither Toyota nor MicroPairing has identified a witness who would be unwilling to testify. This Court has found this renders the factor neutral. *DynaEnergetics Europe GMBH v. Hunting Titan, Inc.*, 2020 WL 3259807, *7 (W.D. Tex. 2020); *see also In re Hulu, LLC, 2021 WL 3278194*, at *4 (Fed. Cir. 2021) (factor neutral absent showing of comparative advantage).

### iii. The Cost of Attendance for Willing Witnesses

"The convenience of witnesses is the single most important factor in the transfer analysis." *Fintiv*, 2019 WL 4743678, at *6. "Courts properly give more weight to the convenience of non-party witnesses than to party witnesses." *Netlist*, No. 6:20-cv-00194-ADA, ECF No. 87 at 13; *see also Moskowitz Family LLC v. Globus Med., Inc.*, No. 6:19-cv-00672-ADA, 2020 WL 4577710, at *4 (W.D. Tex. Jul. 2, 2020).

As a preliminary matter, given typical time limits at trial, the Court does not assume that all of the party and third-party witnesses listed in Section 1404(a) briefing will testify at trial. *Fintiv*, 2019 WL 4743678, at *6. Rather, in addition to the party's experts, the Court assumes that no more than a few party witnesses—and even fewer third-party witnesses, if any—will testify live at trial. *Id.* Therefore, long lists of potential party and third-party witnesses do not affect the Court's analysis for this factor. *Id.*

Toyota alleges that it is unaware of any potential witnesses residing in Waco, and that conversely every witness from TMMTX who conducts the alleged infringing acts resides in San

7

Antonio. ECF No. 24 at 5. Thus, to attend proceedings in Waco, the majority of people that Toyota states are relevant witnesses would have to travel more than 100 miles, increasing the inconvenience factor. In response, MicroPairing provides a list of four third-party companies it believes have relevant witnesses for whom Waco would be more convenient than San Antonio based on distance. ECF No. 39 at 9. In its reply, Toyota points out that these witnesses are at most speculative through LinkedIn profiles, and further that none of the third-party entities named are alleged to have infringed the asserted patents. ECF No. 40 at 3-4.

As this Court has made clear, "[i]f a substantial number of witnesses reside in one venue and no witnesses reside in another, th[is] factor will weigh in favor of the venue where witnesses reside." *SITO Mobile R&D IP v. Hulu, LLC*, 2021 WL 1166772, at *5 (W.D. Tex. 2021) (citing *Genentech*, 566 F.3d at 1345). The Court finds that this is precisely the case here. Witnesses are alleged to be in San Antonio by Toyota, while MicroPairing only posits that witnesses may exist in cities closer to Waco, without asserting that any witnesses exist in Waco itself.

The Court is not persuaded that traveling from places outside of either division would be easier to Waco than to San Antonio. In fact, the availability of a manufacturing plant in San Antonio with remote working areas limits disruptions to their regular duties brought about by court proceedings. See *Hammond Dev. v. Amazon*, 2020 WL 6136783, at *4 (finding the convenience of witnesses weighed in favor of transfer to Austin, where the defendant had offices in Austin, and out of town witnesses "can work in the Austin offices"). For non-party witnesses, both divisions are similarly convenient. Accordingly, this Court finds that this factor weighs strongly in favor of transfer.

### *iv. All Other Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive*

When considering the private interest factors, courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). "[W]here there is a co-pending litigation . . . involving the same patent-in-suit, . . . pertaining to the same underlying technology and accusing similar services, . . . the Federal Circuit cannot say the trial court clearly abuses its discretion in denying transfer." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 n.3 (Fed. Cir. 2010).

MicroPairing contends that this factor weighs strongly against transfer because the co-pending GM case involves the same asserted patents and very similar accused technologies. ECF No. 39 at 10-11. MicroPairing also points out that the cases involve overlapping issues, such as claim construction, invalidity, prior art, conception, and reduction to practice, and are on aligned schedules with a consolidated Markman hearing set for October 1, 2021.  ECF No. 39 at 10.

Toyota Counters that the TMMTX and GM cases involve different products, and that MicroPairing has filed numerous other lawsuits on the same patents in jurisdictions other than the WDTX. ECF No. 40 at 4. The Court agrees with MicroPairing's analysis that judicial resources are saved if the TMMTX and GM cases are decided together in this Court. First, claim construction is one of the most important issues in a patent infringement case and can potentially determine the outcome of a case and guide the parties in determining whether to settle or bring the case to trial. Both the parties and the Court would spend a significant amount of time and money on the claim construction briefing, hearing, and order. For the claim construction issue alone, a significant amount of judicial resources can be saved if the two cases are decided

9

together. Further, if the case is transferred to San Antonio and the GM case remains in this Court, the parties could face the risk of inconsistent constructions of the same claim terms from two district courts, which could unfairly prejudice the parties.

However, this court also recognizes that "[w]hile judicial economy may be served by having the Court try cases that involve the same patents, cases involving the same patents but different defendants, products, and witnesses [as is the case here] will not necessarily be expedited by being in the same court." Parkervision, Inc. v. Intel Corp., 2021 WL 401989, *6 (W.D. Tex. 2021). In this scenario, because MicroPairing has filed numerous lawsuits involving the same patents in other districts, any argument favoring judicial economy is weakened. *See Datascape, Ltd. v. Dell Techs., Inc.*, 2019 WL 4254069, *3 (W.D. Tex. 2019) (finding that the concern that transfer would "requir[e] another court to address overlapping issues, and would create a risk of inconsistent rulings" was without merit where plaintiff had filed suit in numerous district courts asserting the same patents.) Therefore, the Court finds that this factor weighs only slightly against transfer.

**B. Public Interest Factors**

   *i. Administrative Difficulties Flowing from Court Congestion*

The relevant inquiry under this factor is "[t]he speed with which a case can come to trial and be resolved[.]" *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009). A faster average time to trial means a more efficient and economical resolutions of the claims at issue. Thus, this factor "generally favors a district that can bring a case to trial faster." *Found. Med., Inc. v. Guardant Health, Inc.*, 2017 WL 590297, at *3 (E.D. Tex. Feb. 14, 2017). However, this factor is the "most speculative" of the factors bearing on the transfer decision. *Genentech,* 566 F.3d at 1347.

Toyota alleges that it is not aware of any significant congestion in either division that would favor one over the other. ECF No. 24 at 10. MicroPairing conversely argues that it has only been able to locate one patent case that has gone to trial in the San Antonio Division in the last decade, which took nearly four years to get to trial. ECF No. 39 at 12. By contrast, this Court's Order Governing Proceedings – Patent Case ("OGP") sets patent cases for trial at 52 weeks after *Markman* hearings. Despite the large number of cases pending before this Court, the Court has been able to bring patent cases to trial approximately in accordance with its guidance in the OGP. *See, e.g., CloudofChange, LLC v. NCR Corporation*, No. 6-19-cv-00513 (W.D. Tex., filed Aug. 30, 2019) (20.3 months from case filing to trial); *VLSI Technology LLC v. Intel Corporation*, No. 6-21-cv-00057 (W.D. Tex., filed Apr. 11, 2019) (22.4 months from case filing to trial); *Freshub, Inc. et al v. Amazon.Com Inc. et al*, No. 6-21-cv-00511 (W.D. Tex., filed Jun. 24, 2019) (23.7 months from case filing to trial); *ESW Holdings, Inc. v. Roku, Inc*. No. 6-19-cv-00044 (W.D. Tex., filed Feb. 8, 2019) (25.9 months from case filing to trial).

MicroPairing further argues that while the Waco Court is fully open and equipped to handle jury trials, the San Antonio Division's most recent order continues all jury trials scheduled to begin through October 3, 2021. ECF No. 39 at 12.

Comparing the relative court congestion in the San Antonio Division and in the Waco Division, the Court finds that this factor weighs slightly against transfer.

### ii. Local Interest in Having Localized Interests Decided at Home

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-cv-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015).

Toyota argues that San Antonio has a strong local interest in this matter because Toyota owns and operates a manufacturing facility in San Antonio, San Antonio is the home of the accused products, and Toyota's only employees and facilities in the District are in San Antonio. ECF No. 24 at 8-9. On the other hand, MicroPairing argues only that Waco has three Toyota dealerships, and that Toyota has a partnership with Baylor Athletics, located in Waco. ECF No. 12.

The Court is not convinced that Waco's local interest is comparable to that of San Antonio. While this Court recognizes the pride of Waco Toyota dealers as well as National Champion Baylor Athletics, none of this evidence is related to the "events that gave rise to [this] suit." *In re Apple Inc.*, 979 F.3d 1332, 1345 (Fed. Cir. 2020). The alleged infringing activities are all alleged to have occurred within the San Antonio Division. This factor thus strongly favors transfer.

### *iii. Remaining Public Factors are Neutral*

Both parties agree that the remaining two public factors are neutral. ECF No. 24 at 10; ECF No. 40 at 14. The Court also finds that these two factors are neutral.

### IV. CONCLUSION

Having considered the Section 1404(a) factors, the Court finds that Toyota has met the burden of demonstrating that the San Antonio Division is "clearly more convenient" than this District. Therefore, the Court **GRANTS** Toyota's Motion to Transfer.

SIGNED this 1st day of October, 2021.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE